Billy C. GOSNEY and Mary Lynn Gosney, Plaintiffs-Appellants,

v.

SONORA INDEPENDENT SCHOOL DISTRICT et al., Defendants-Appellees.

No. 77–1810.

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1979.

Rehearing Denied Oct. 31, 1979.

Larry Watts, Houston, Tex., for plaintiffs-appellants.

George S. Finley, San Angelo, Tex., for defendants-appellees.

Before WISDOM, CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

This section 1983 civil rights action[1] arose from the refusal of the Sonora Independent School District to renew teaching contracts of appellants Billy C. Gosney and his wife Mary Lynn Gosney. Billy C. Gosney was hired as a junior high school principal by the Sonora Independent School District in 1962. Mary Lynn Gosney was hired as an elementary school teacher in the same district in 1963. The Gosneys held their respective positions with untarnished records until 1974, when the school district's board of trustees declined to renew their one-year contracts because it found them in violation of its policy against outside employment by school district personnel.[2] Over their years in Sonora, the Gosneys had acquired a substantial cattle ranching enterprise. In May 1974, they added a retail dry goods store to their holdings. The Sonora Independent School District's Board of Trustees, which hired the district's personnel, knew of the Gosneys' cattle ranching interests but did not base its nonrenewal decision on that activity. Rather, it was concerned only with their retailing venture.

The board learned of the Gosneys' acquisition of the dry goods store after it had adopted and entered in its official minutes motions to rehire Mr. and Mrs. Gosney for the 1974–75 academic year and after they had been informed of its action—but before the contracts were issued.[3] It responded to the new information by holding meetings on May 6 and 13, 1974, reopening discussion of the Gosneys' contract renewals. The board orally invited Mr. Gosney to attend a meeting on May 20 to address the matter.

---

1. Civil Rights Act of 1891, 42 U.S.C. § 1983.

2. This policy is incorporated in each employment contract by a clause that provides that "Second Party shall not engage in any other business or profession directly or indirectly, for full time or for part time, but shall devote his or her entire working time to the performance of this [sic] duties under this contract." In addition, it is embodied in School Board Policies and Administrative Procedures 11.4, *Outside Employment,* which states, "No teacher in the Sonora Independent School District will accept outside employment during the school year."

3. At its February 11, 1974, regularly scheduled meeting, the board of trustees adopted and recorded a motion to rehire Bill Gosney for 1974–75 as a principal. It adopted a motion accepting Mrs. Gosney as an elementary school teacher for 1974–75 on March 11, 1974. Mr. and Mrs. Gosney respectively were informed on these dates of the board's actions to renew their employment by the school district's superintendent. The Gosneys purchased the dry goods store effective May 1, 1974, and announced their ownership by a newspaper advertisement on May 2, 1974.

At this meeting, Mr. Gosney informed the board that neither he nor Mrs. Gosney intended to resign to manage the store and that they had retained the store's long-time business manager to run it. Gosney argued that because the store would be operated through employed personnel the business would not interfere with his duties as principal. Unpersuaded, the board of trustees voted four to three at the May 20 meeting not to renew the contracts of either Mr. or Mrs. Gosney because of their growing involvement in outside businesses.

The Gosneys hired an attorney and requested another hearing, which was granted and held on June 24, 1974. Before this meeting, Mr. Gosney was given a copy of the minutes of the May 20, 1974, meeting that set forth the board's reasons for not renewing the contracts. At the June 24 meeting, Mr. Gosney stressed again that he intended to hold the store only as an investment and that it would be managed by someone without the active participation of himself or his wife. The board adhered to its decision not to renew Mr. Gosney's contract but relented as to Mrs. Gosney and offered her a teaching contract, which she refused.[4]

Mr. and Mrs. Gosney then brought suit for reinstatement, for back pay, and for declaratory and injunctive relief against the Sonora Independent School District, its superintendent of schools in his official capacity, and, again in their official capacities, against the four members of the board of trustees who had voted against their contract renewals. The Gosneys alleged that the defendants violated their fourteenth amendment rights to procedural due process by depriving them of a property interest in continued employment without affording them adequate notice and hearing; to substantive due process by enforcing a rule against outside employment that bore no

rational relation to any legitimate state interest in the educational system; and to equal protection by arbitrarily and selectively enforcing the outside employment rule against them.

The district court, in an unpublished opinion, held that the Gosneys had a protected property interest in their continued employment by virtue of the board's vote to grant them one-year contracts for 1974–75 but that they were afforded procedural due process because they received both notice that their purchase of the dry goods store was problematic under district policy and an opportunity to appear before the school board and present their case in impartial hearings. The court also held that the board's policy against outside employment did not violate the Gosneys' substantive due process rights because the rule was a rational and proper means for assuring a well-functioning school system. And the trial judge, construing the rule as forbidding only "substantial outside [business] involvement," held that it was not arbitrary in application or violative of the Gosneys' equal protection rights. Finally, he found that the record of the school board hearings furnished substantial evidence to support the nonrenewal action and that Mrs. Gosney's rejection of an unconditional offer to give her a contract for the 1974–75 academic year provided the school board with an absolute defense against her claims. While we agree with much of the analysis of the court below, we reverse because we find that the enforcement of the rule was arbitrarily and discriminatorily selective in violation of the equal protection clause of the fourteenth amendment.

■ Preliminarily, we find that because she received a good-faith, unconditional offer of an employment contract from the school district, Mrs. Gosney suffered no injury from its policy against outside employ-

4. The board authorized renewal of Mrs. Gosney's contract on the ground that several married women worked for the school system while their husbands operated separate businesses, that she fell within this category and, therefore, that she should not be held to a different standard. There was a dispute at trial as to whether the school board offered Mrs. Gosney employment for 1974–75 unconditionally or only if Mr. Gosney would drop all legal claims against the school district. The district judge found the contract offer to have been unconditional. His ruling was supported by substantial evidence in the record.

ment or from its procedures for contract nonrenewal decisions and, consequently, lacked standing to bring this case. We therefore confine our review to the question of whether the school district denied Mr. Gosney procedural or substantive due process or equal protection and whether its action was supported by substantial evidence.

■■ It is now well established that the constitution requires an opportunity for a hearing before the nonrenewal of a public school employee if the decision deprives the employee of a protected liberty or property interest. *See, e. g., Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Stapp v. Avoyelles Parish School Board,* 545 F.2d 527, 532–35 (5th Cir. 1977). Mr. Gosney asserted that his nonrenewal deprived him of a protected property interest in continued employment for the 1974–75 academic year. He based this claimed property interest on the school board's February 11, 1974, adoption of a motion to rehire him and the entry of this motion in the official board minutes.[5] Under "School Board Policies and Administrative Procedures 1.7—*Authority of the Board*," the "Board minutes constitute legal, binding action and policy procedure." The February 11 minutes establish that Mr. Gosney had more than a unilateral expectation of continued employment. In light of the expressed binding nature of the minutes, they secured to him a legitimate, nonsubjective claim of entitlement to renewal for purposes of due process protection. *See Board of Regents v. Roth,* supra, 408 U.S. at 577, 92 S.Ct. 2701. Indeed, in a similar case, this court held that a letter of intent to rehire from a school superintendent to a principal[6] created a due process property interest in continued employment after the principal expressed interest in renewal and

emphasized that "a non-subjective expectancy of continued employment" and "not an iron clad contract capable of enforcement" was the key to triggering due process protection. *Stapp v. Avoyelles Parish School Board,* supra at 533 & n.15.

Although we find that Mr. Gosney had a protected property interest in his employment as a principal, we also find that the school district's procedures fully satisfied constitutional requirements for notice and hearing. Mr. Gosney was provided verbal notice of the May 20, 1974, meeting and told that it would address the problem of contract renewal caused by his purchase of the dry goods store. At that meeting and before the board made its decision, he was permitted to present to the board his arguments for renewal of his contract. Prior to the June 24 board hearing, he was provided written notice of the charge against him in the form of minutes from the May 20 meeting, disclosing the board's reason for his nonrenewal. And at the June 24 hearing, he was again allowed to present his case orally, as well as to have his lawyer question witnesses on his behalf and cross-examine board members as to the basis of their action. Moreover, the trial judge found upon substantial evidence that the school board was an impartial tribunal. *Cf. Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970) (outlining minimum requirements of due process for termination of teacher for cause).

■ Mr. Gosney fares no better with his challenge to the school district's action as violative of substantive due process. The district court rejected this claim by interpreting the Sonora Independent School District's no-outside-employment rule as forbidding only *substantial* outside business involvement. We read school district policy

---

**5.** The minutes read in relevant part, "Motion was made, seconded and carried to rehire the following personnel: . . . Bill Gosney. . . . ."

**6.** The letter of intent in *Stapp* specified that upon the principal's communication of his willingness to continue employment the school sys-

tem would consider him under contract for the upcoming year and would release him only for urgent and unforeseeable circumstances. We do not believe that the board's action in entering into official, legally binding minutes its motion to rehire Billy Gosney was any less effective in creating a property interest in renewal.

11.4 and the contract clause [7] as not so limited and as proscribing all "outside employment" and efforts to "engage in any other business or professions directly or indirectly." However, we find that such a rule, tested by the standard of rationality, *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955),[8] is reasonably related to the legitimate state interest in assuring that public school employees devote their professional energies to the education of children. The policy takes steps to effectively remove from school employees the temptation to drain professional efforts into the furtherance of their own business interests on the rational premise that persons engaged in outside businesses will tend to have less time and interest and to be less responsive to the demands of their jobs than they would were school teaching or administration their sole occupation. The fact that the policy does not determine on an individualized, more precise basis whether the employee was in fact devoting his or her energies substantially to the school system does not mean that the objective of assuring such professional commitment was not rationally furthered by the no-outside-employment rule. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. at 316–17, 96 S.Ct. 2562 (finding state mandatory retirement age regulation for state policy rational as means for removing physically unfit officers despite fact that state could have determined fitness more precisely through individualized testing of older employees).

■ Nor does the no-outside-employment rule violate due process as facially void for vagueness. The contract clause explicitly

informed each person subject to it of the conduct (engaging directly or indirectly in any business or profession other than that for which he was hired by the school district) that would render him ineligible for public school employment. The contract, by it terms, was not "so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Rather, by forbidding definite activities in definite language, it afforded an ascertainable standard by which school system employees could guide their conduct and did not by its language trap the unwary without fair warning or impermissibly delegate basic policy matters to the board for resolution on a subjective ad hoc basis. *See Grayned v. City of Rockford,* 408 U.S. 104, 108–12, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Of course, it will always be true that the fertile legal "imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question," *American Communications Association v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950), but that alone does not render the rule void for vagueness.

That the school district's no-outside-employment policy on its face afforded a clear standard for defining proscribed activity is not to say, however, that the standard was consistently applied. The record contains substantial evidence to support the school board's finding that, by his purchase of the store, Mr. Gosney actively engaged in the retail dry goods business and was not a mere passive investor similar to someone who bought stock on a stock exchange.[9]

---

7. See n.2 *supra.*

8. Although more rigorous substantive due process scrutiny may be accorded to protect fundamental liberty interests, *e. g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the right of government employment is not per se fundamental, and regulations impinging on it need not be tested by strict scrutiny, *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (applying rationality standard to test equal protection claims in case

challenging age limitation on government employment).

9. For example, according to Mr. Gosney's testimony at the June 24 hearing, the previous owner, an experienced businessman, spent two to three hours three or four days each week supervising the store under the same full-time manager arrangement that the Gosneys proposed to use. Since Mr. Gosney was inexperienced at operating the store, it was suggested that he would need to expend even more time. In addition, the store's manager testified that

However, Mr. Gosney charged that even if the policy did apply squarely to him, the school district arbitrarily and discriminatorily applied it to deny him continued employment while permitting other teachers to engage in outside employment. Mr. Gosney asserted that, for example, one school employee kept records for a local physician, another worked for a local drive-in theater as a ticket collector, and that many teachers owned or helped run substantial ranches, all without running afoul of the school district's no-outside-employment rule. Indeed, the Gosneys themselves ran a substantial cattle ranch without the district's having visited its sanctions upon them for that activity. At trial, testimony by various board members substantiated Mr. Gosney's claim that other school district employees had outside employment and that although at the time of his nonrenewal the board had been aware of the business activities of other employees, the policy had in its entire history only been applied to the Gosneys.

 This circuit has firmly established that a public education system may not single out an instructor (or administrator) for "the imposition of restrictions which are not applicable to others similarly situated." *Ferguson v. Thomas, supra* at 857; *Trister v. University of Mississippi,* 420 F.2d 499, 502 (5th Cir. 1969).[10] Since other employees equally subject to the contractual restriction and, for all that appears from the record, equally engaged in business enterprises, such as ranching, were not denied employment, the Sonora Independent School District violated Mr. Gosney's fourteenth amendment right to equal protection of the law.[11] *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). We therefore reverse and remand for appropriate relief.

We emphasize that our decision in the present case does not prevent the school district from uniformly applying its present rule in the future. Nor does it prevent the district from adopting a more flexible rule—one perhaps more suited to its particular circumstances as a rural community where many teachers apparently live on working ranches—that in clear terms per-

the owners would of necessity be involved in decisions regarding the setting of employee salaries and advertising expenditures, whether to hold a sale to stimulate business, and whether to make additional capital investment in the store. All these factors substantiate that the purchase caused Mr. Gosney to be engaged in business.

10. In *Trister* this circuit held that where several other members of the University of Mississippi Law School faculty were permitted to teach part time and practice law part or full time, the university could not constitutionally refuse to renew the contracts of professors because they worked part time for the Legal Services Program of the Office of Economic Opportunity when such part-time employment was not detrimental to their teaching. The court held that the "[d]efendants have denied plaintiffs the equal protection of the laws by imposing upon their activities restrictions that are different and more onerous than those imposed upon other professors in the same category. . . . Plaintiffs . . . have the constitutional right to be treated by a state agency in no significantly different manner from others who are members of the same class, i. e., members of the faculty of the University of Mississippi School of Law." 420 F.2d at 502.

11. As noted, *supra* at p. 524, the trial judge imposed a limiting construction on the school district's policy under which it proscribed only "substantial" business activity and found that the school board reasonably could have concluded that Mr. Gosney was engaged in "substantial" business activity, whereas ranchers and other moonlighters were not engaged in "substantial" business efforts. Although we have found that the rule is not so confined, even under such a construction the rule was arbitrarily applied against Mr. Gosney and cannot survive his equal protection attack. The record does not contain adequate evidence distinguishing, in terms of extensiveness of involvement, Mr. Gosney's extracurricular income-producing efforts from those of other employees. Substantial evidence in the record must support the school district's decision. *Stapp v. Avoyelles Parish School Board, supra* at 534; *Ferguson v. Thomas, supra* at 858. Moreover, at trial various members of the school board admitted that they did not have a standard for determining that a business activity was "substantial" and could not convincingly differentiate Mr. Gosney's business activities from those of ranching teachers. Their decision that Mr. Gosney's retailing enterprise necessitated his nonrenewal, then, applied with a discriminatorily unequal hand the facially fair policy against outside employment.

mits a certain amount or kind of outside employment and prohibits all employment not falling within the clearly defined acceptable categories. The efforts of the school district to tackle the complex problems of administering a public school system are entitled to great respect, and the school district has wide latitude in deciding questions of educational policy. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 41–45, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). We hold today only that in attempting to solve persistent and difficult problems presented by public education the school district cannot apply its rules discriminatorily in violation of the equal protection clause of the fourteenth amendment.

REVERSED and REMANDED.