**Edward ARCENEAUX, et al., Plaintiffs-Appellees,**

v.

**David C. TREEN, individually and in his capacity as Governor of the State of Louisiana, et al., Defendants-Appellants.**

No. 80–3897.

United States Court of Appeals, Fifth Circuit.

March 22, 1982.

---

**18.** The text of section 105(b)(3)(D) is set out in note 7, *supra.*

**19.** *Id.*

William J. Guste, Jr., Atty. Gen., Patricia Nalley Bowers, Asst. Atty. Gen., Ronald C. Davis, New Orleans, La., for defendants-appellants.

Mark G. Murov, New Orleans, La., M. David Gelfand, White Plains, N. Y., for plaintiffs-appellees.

Mary E. Howell, New Orleans, La., for Amicus Council 17, American Federation of State, County & Municipal Emp., AFL–CIO.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

This appeal grows out of a class action for declaratory and injunctive relief against enforcement of certain provisions of Louisiana's Dual Office Holding and Dual Employment Law, Act No. 700 of 1979, La.Rev. Stat.Ann. 42:61–66 (West Supp. 1981). The Act's prohibitions on dual public employment are set forth in La.Rev.Stat. 42:63.[1] More specifically, subsections A and E of section 63 were challenged as violative of the Louisiana Constitution and of the equal protection, due process, and contract clauses of the United States Constitution. Section 63A forbids state or local government employees from working full or part time for either the federal government or for another state government. Section 63E forbids dual "full-time" employment, i.e., more than 35 hours per week at each public sector job.[2]

---

1. § 63. Prohibitions
 A. No person holding an elective office, appointive office, or employment in any of the branches of state government or of a political subdivision thereof shall at the same time hold another elective office, appointive office, or employment in the government of a foreign country, in the government of the United States, or in the government of another state.
 B. Except as otherwise provided by the Louisiana constitution, no person holding office or employment in one branch of the state government shall at the same time hold another office or employment in any other branch of the state government.
 C. No person holding an elective office in the government of this state shall at the same time hold another elective office, a full-time appointive office, or employment in the government of this state or in the government of a political subdivision thereof.
 D. No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office or full-time appointive office in the government of this state or in the government of a political subdivision thereof. No such person shall hold at the same time employment in the government of this state, or in the same political subdivision in which he holds an elective office. In addition no sheriff, assessor, or clerk of court shall hold any office or employment under a parish governing authority or school board, nor shall any member of any parish governing authority or school board hold any office or employment with any sheriff, assessor, or clerk of court.
 E. No person holding a full-time appointive office or full-time employment in the government of this state or of a political subdivision thereof shall at the same time hold another full-time appointive office or full-time employment in the government of the state of Louisiana, in the government of a political subdivision thereof, or in a combination of these.

2. La.Rev.Stat.Ann. 42:62(4) provides: " 'Full-time' means the period of time which a person normally works or is expected to work in an appointive office or employment and which is

Plaintiffs' claims for a permanent injunction and for a declaratory judgment were submitted to the district court, along with a motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a)(2). The court deferred consideration of class certification pending its decision on injunctive and declaratory relief. Trial was held on January 16, 1980. The court certified a class consisting of

All persons holding employment (not including full-time appointive office) in any of the branches of government of the State of Louisiana or of a political subdivision thereof and who also hold employment in the government of a foreign country, in the government of the United States, or in the government of another state; and all persons holding full-time employment with the State of Louisiana who also hold full-time employment with a political subdivision thereof, and those holding full-time employment with two political subdivisions.

The named plaintiffs were at all times holders of dual low-level, nonelective jobs with the city, state, or federal governments.[3] None of the named plaintiffs were government officials, and none held two full-time positions with the State of Louisiana. The challenge was therefore directed neither at the Act's ban on multiple elective or appointive positions nor at its prohibition, at section 63B on the holding of two jobs within branches of the Louisiana state government.

The district court held that section 63A and E violated the equal protection clause of the fourteenth amendment to the United States Constitution. Specifically, the court declared:

Subsection (A) of La.Rev.Stat. 42:63 unconstitutional as applied to those holding employment (as opposed to those holding elective or appointive office with the state government or a political subdivision thereof) ... subsection (E) of La. Rev.Stat. 42:63 unconstitutional as applied to those holding full-time employment (as opposed to those holding full-time appointive office) with the State of Louisiana and full-time employment with a political subdivision thereof; and as applied to those holding two full-time employments with a political subdivision of the state.

The governor and attorney general of the State of Louisiana here appeal. We reverse the court's finding of a violation of the equal protection clause.

### Equal Protection

 The equal protection clause mandates similar treatment of persons in similar situations.[4] It is hornbook law that equal protection analysis is traditionally made against the backdrop of two standards, strict scrutiny and minimum rationality. Strict scrutiny, requiring that the challenged statute further a compelling state interest, is "strict" in theory and usually "fatal" in fact[5] and "has been reserved for matters involving race, religion, national origin, and characterizations impinging upon 'fundamental rights.'" Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 (5th Cir. 1981) (footnotes omitted).[6] Rational basis scrutiny requires only that the legislative classification rationally promote a legitimate governmental objective. Un-

at least seven hours per day of work and at least 35 hours per week of work."

3. They included, for example, a United States postman who also works as a night custodian for the City of New Orleans.

4. Amendment XIV(1) of the United States Constitution provides, inter alia, "nor shall any state ... deny to any person within its jurisdiction the equal protection of the laws."

5. See Gunther, "The Supreme Court, 1971 Term—Forward: In Search of Revolving Doctrine on a Changing Court: A Model for a

Newer Equal Protection," 86 Harv.L.Rev. 1, 8 (1972). But strict scrutiny is not invariably fatal. See, e.g., Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

6. Strict scrutiny has been applied to "suspect classifications," e.g., McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), and to rights "explicitly or implicitly guaranteed by the Constitution," San Antonio Ind. Sch. Dist. v. Rodriguez, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973).

der the wide scope of discretion afforded states under this test, the constitutional safeguard is "offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The deference to legislative purpose implicit in this test amounts to a presumption of constitutionality. *Id.*

In the proceedings below, the district court applied an intermediate level of scrutiny used by the Supreme Court in such cases as *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).[7] Applying this "means-ends" scrutiny, the district court defined its task as, first, the examination of the state interest at stake and, second, the testing of the state's ends "to determine whether they are substantially related to the legislative classifications made by the statute."

█ We find that the district court mistakenly applied this middle tier level of scrutiny to Louisiana's statutory classification. Intermediate means-ends scrutiny has traditionally been applied only to cases involving "suspect" classifications and violations of fundamental rights. *See, e.g., Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1173 (5th Cir. 1979). Although there is some Fifth Circuit authority that tends to support the proposition that intermediate scrutiny can be triggered if *important* and not necessarily *fundamental* rights are at stake,[8] three recent opinions have clarified the Supreme Court's "not altogether con-

sistent"[9] pronouncements in the area of equal protection analysis. The Court has reaffirmed that, absent an allegation that a legislative classification scheme burdens fundamental rights or creates suspect/quasi-suspect classifications, economic and social legislation are to be examined under the rational-basis standard. Thus, in *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), the Supreme Court applied the rational-basis test to uphold the 1974 Railroad Retirement Act's grandfather provision, 45 U.S.C. § 231b(h)(1), expressly preserving "windfall" benefits from some classes of employees. Similarly, in *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the Supreme Court applied the same test and upheld a Minnesota statute that banned the retail sale of milk in plastic nonreturnable, nonrefillable containers. The stated purpose of the Minnesota statute was to promote resource conservation and to ease waste disposal problems. In the course of its opinion the Court stated:

> Whether *in fact* the Act will promote more environmentally desirable milk packaging is not the question: the Equal Protection Clause is satisfied by our conclusion that the Minnesota Legislature could *rationally have decided* that its ban on plastic nonreturnable milk jugs might foster greater use of environmentally desirable alternatives.

*Id.* at 466, 101 S.Ct. at 725 (emphasis in original).[10] Finally, in *Western & Southern*

---

7. Legislative classifications "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren,* 429 U.S. at 197, 97 S.Ct. at 457.

8. Thus, in *Thompson v. Gallagher,* 489 F.2d 443 (5th Cir. 1973), we held a city ordinance barring municipal employment of veterans not having an honorable discharge to be unreasonable, since the ordinance did not rationally relate the veterans' status to the requirements of city employment. Although we may be read as having applied a rationality test, our analysis was arguably more in the nature of a means-ends scrutiny. *Id.* at 449. Similarly, in *Chatham v. Jackson,* 613 F.2d 73, 79 (5th Cir. 1980), we applied intermediate scrutiny to a statute

involving "constructive eviction from homes for lack of an essential to existence—water." *See also Coakley v. Postmaster of Boston, Massachusetts,* 374 F.2d 209 (1st Cir. 1967). *Compare* Tribe, *Constitutional Law* 1089 (1978), *with* Nowak, Rotunda & Young, *Handbook on Constitutional Law* 410 (1978).

9. *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

10. Both *Minnesota v. Clover Leaf, supra,* and *U.S. Railroad Retirement Board v. Fritz, supra,* cited *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), with approval. In *Dukes* the Supreme Court dismissed an

*Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981), the Court, in passing upon the constitutionality of California's "retaliatory" tax on certain out-of-state insurance companies, attempted to clarify the nature of the equal protection inquiry:

> In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) does the challenged legislation have a legitimate purpose?, and (2) was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*Id.* at 668, 101 S.Ct. at 2083.

▆ Rational-basis scrutiny is applicable here. Plaintiffs do not allege that they belong to a suspect or quasi-suspect class, and the right to hold public employment is not a recognized fundamental right. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (upholding mandatory retirement from government service at age 50; legislation tested under minimum rationality scrutiny). We must therefore apply the two-stage inquiry outlined in *Western & Southern Life Insurance,* 668

U.S. at 451, 101 S.Ct. at 2083. The answer to the first question of this inquiry is obvious here. Although Louisiana has advanced a host of rationales for section 63's prohibitions on dual public employment, we need not look any further than the statute's explicitly stated purposes in order to uphold the legitimacy of the state's goals. Section 61 states the purposes of the Act's prohibitions.[11] Restrictions on dual officeholding and public employment are not novel. They can be found in the statutes of many other states.[12] Even under the common law, there were restrictions on the holdings of incompatible offices. *See* Annotation, 63 Am.Jur.2d *Public Officers and Employees* § 61–81 (1972 & Supp. 1981). Louisiana is legitimately concerned with its citizens' perceptions of public employment. The Louisiana statute is obviously aimed at the widespread perception that public employment—whether in federal, state, or local government offices—is merely a sinecure and that it is intolerable to give persons two slices of the public pie.

▆▆ It was also reasonable for Louisiana legislators to believe that dual low-level public sector employment creates an improper appearance of impropriety. Section

equal protection challenge to a New Orleans ordinance prohibiting pushcart food sales in the French Quarter of the city, despite the "grandfather provision" of the ordinance that exempted pushcart vendors who had operated in the Quarter for eight years. The Supreme Court concluded that "the city could reasonably decide" that the older vendors had become part of the distinctive charm of the Quarter. *Id.* at 305, 96 S.Ct. at 2518. We think that *Dukes* is indistinguishable from the case *sub judice.*

11. La.Rev.Stat.Ann. § 61 (West Supp.1981) provides:
Declaration of Policy.
A. It is essential to the maintenance of a democratic society that public officials and employees perform the public business in a manner which serves to promote and maintain in the general citizenry a high level of confidence and trust in public officials, public employees, and governmental decisions. The attainment of this end is impaired when a public official or employee holds two or more public offices or public jobs which by their particular nature conflict with the duties and

interests of each other. The attainment of a high level of confidence and trust by the general citizenry in public officials, employees, and governmental decisions is further impaired by the excessive accumulation of governmental power which may result from public officials or employees holding two or more public offices or public jobs.
B. It is the purpose of this Part to implement a policy which will serve to maintain a high level of trust and confidence by the general citizenry in public officials, employees, and governmental decisions of the government of this state and of its political subdivisions by defining and regulating dual employment and by defining, regulating, and prohibiting dual officeholding.

12. For a review of statutes restricting dual officeholding and state court decisions on their permissible breadth, *see Cummings v. Godin,* 377 A.2d 1071, 1074–76 (R.I.1977) (city's home rule charter prohibiting city employees from holding elective offices held unconstitutionally overbroad). First amendment rights are, of course, not implicated in this case.

63's prohibitions have a reasonable basis. The district court held subsection 63A over inclusive because it does "not bear any reasonable relation" to the purported objectives of promoting public confidence in government. According to the district court, the Louisiana Legislature should have restricted dual public employment to instances in which conflicts of interest are obvious, *e.g.*, to cases in which the hours of the two employments conflict. We do not doubt that the Louisiana Legislature could have drawn narrower definitional lines. As has often been pointed out, however, courts are ill equipped to judge the wisdom of such legislative line drawings. *See, e.g., New York City Transit Authority v. Beazer*, 440 U.S. 568, 592–93, 99 S.Ct. 1355, 1369–70, 59 L.Ed.2d 587 (1979); *Alford v. City of Lubbock*, 664 F.2d 1263, 1266–1268 (5th Cir. 1982). Similarly, subsection 63E, applicable only to two full-time positions within political subdivisions of the State of Louisiana, is a rational means of maintaining employee efficiency and avoiding those conflicts of interest likely to be destructive of public confidence in government.

The district court's concern that subsections 63A and E lacked a "close fit" with their purported justifications was answered by the Supreme Court long ago in *Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970):

> In the area of economic and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its law are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ... "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." ... [The rational-basis standard] is true to the principle that the fourteenth Amendment gives the federal courts no power to impose upon the states their views of what constitutes wise economic or social policy.... The Equal Protec-

> tion Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.

(Citations omitted). We therefore conclude that the challenged provisions of Louisiana law withstand the strictures of the equal protection clause.

### Other Constitutional Claims

■ Plaintiffs' other challenges to subsections 63A and E, invoking the due process and contract clauses of the United States Constitution, do not require such extended treatment. Plaintiffs argue that they have a legitimate expectation of continued employment in their positions and that under the due process clause of the fourteenth amendment they were entitled to notice and individual hearings before they could be discharged, relying on *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Yet the plaintiffs do not allege that subsections 63A and E have been discriminatorily *applied*. The challenge here is to state legislation of general application to *all employees* within the specified class, not with the dismissal of individual public employees. As the district court discerned, plaintiffs' arguments state an equal protection, not a due process, challenge. Cases such as *Perry v. Sindermann, Roth*, and *Gosney v. Sonora Independent School District*, 603 F.2d 522 (5th Cir. 1979), applicable to individualized instances of deprivations of settled expectations, are not on point. Even if the plaintiffs' challenge be interpreted to be one based on substantive due process, this adds nothing to the equal protection challenge discussed above. The substantive due process inquiry is whether the legislation is "reasonably related to the legitimate state interest[s]." *Id.* at 526. The Louisiana legislation has "not been shown to be unreasonable, either on its face or as applied." *Seoane*, 660 F.2d at 151. That concludes our inquiry.

■■ Plaintiffs next contend that certain provisions of the Louisiana Constitution,[13] of state statutes,[14] and of collective bargaining agreements constitute contractual agreements by the state that persons in plaintiffs' positions will not be dismissed without "just cause" and that Louisiana cannot impair its obligations in violation of the contract clause of the United States Constitution.[15] This contention was properly dismissed by the district court. As the district court pointed out:

> Even assuming *arguendo* that those provisions are contracts by the state, they clearly were not meant to prohibit the passage and subsequent enforcement of the Act involved in this case. These provisions are designed to protect individuals against arbitrary discharges. They were not designed to protect plaintiffs from future legislative acts defining the qualifications for or placing limitations upon public employment.

Plaintiffs' contract clause argument, in short, sweeps too broadly. There is nothing in the meager case law interpreting the contract clause to suggest that it can be invoked to invalidate statutes, regulations, or policies that change conditions or terms of employment for public employees.[16] Plaintiffs' arguments would go far to prevent Louisiana from enacting any future legislation, however rational, placing new limitations upon the qualifications of its public employees. We have no difficulty in rejecting this argument.

### Louisiana Constitution

■ Finally, plaintiffs assert a pendent claim based upon the Louisiana Constitution of 1974, article X, § 22, La.Stat.Ann. Const. 2 (West 1977), which provides: "The legislature shall enact laws defining and regulating dual employment and defining, regulating, and prohibiting dual officeholding in state and local government." According to the plaintiffs, the framers of the Louisiana Constitution intended that the definition of dual employment, as opposed to dual officeholding, be narrowly drawn. The district court properly dismissed this argument:

> However narrowly the delegates to the convention would have drafted the statute, it is clear that in the enactment of section 22 they left a great deal of discretion to the state legislature. We do not read this section of the Louisiana Constitution, a clear mandate to the legislature to enact a statute "defining and regulating dual employment," as prohibiting the legislature from passing this particular act.

For the reasons above stated, we reverse the district court's finding on the equal protection clause and affirm its disposition of the plaintiffs' due process and contract

---

**13.** La.Const. of 1921, art. XIV, § 15(N)(1), La. Stat.Ann.Const. 3 (West 1977):

> Employees rights and obligations; dismissal, etc., for cause. No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority. (a) The burden of proof on appeal, as to the facts, shall be on the employee.

La.Const. of 1974, art. X, § 8(A), La.Stat.Ann. Const. 2 (West 1977):

> Disciplinary Actions. No person who has gained permanent status in the Classified State or City Service shall be subjected to disciplinary action except for cause expressed in writing. A Classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority.

**14.** La.Rev.Stat.Ann. 17:462–64, 521–25 (West 1963 & Supp.1981).

**15.** Art. I, § 10: "No State shall ... pass any ... Law impairing the Obligation of Contracts ...."

**16.** Neither *Allied Structural Steel v. Spannaus*, 483 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) (applying contract clause to salvage a private contractual agreement between employer and employee), nor *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (contract clause applied to state's obligation to bondholders in connection with interstate compact), two recent cases that have revived the long dormant contract clause, dealt with a state's regulation of the conditions of state employment.

clauses and Louisiana constitutional claims for relief.

AFFIRMED in part and REVERSED in part.

GOLDBERG, Circuit Judge, specially concurring:

The appellees have urged this court to strike down certain provisions of Louisiana's dual employment law,[1] arguing that the statute violates the Due Process, Contract, and Equal Protection Clauses of the Constitution. I concur with Judge Gee and find that Louisiana's law does indeed pass constitutional muster. However, I wish to add a few words in support of the panel decision.

### 1. Assuming There is an Equal Protection Issue, <u>Dukes</u> Controls and Anything Goes

To the extent that there is an equal protection problem presented in this case, the resounding and reverberating words of *Dukes*,[2] cited in Judge Gee's footnote 10, imprison my concurrence. With its holding in *Dukes*, the Supreme Court has made it clear that in a case such as this, we must apply the test of "minimum rationality"[3] and that this test means little more than "anything goes."

I hope that my few words of concurrence are not animated by verjuice, but I feel that I must register my dismay at the prospect of being bound by *Dukes*. While subservient and obedient to the hierarchical superiority of the Supreme Court, I sound no retreat from the proposition that the ordinance challenged in that case was violative of the Equal Protection Clause. However, my beliefs on this question are not controlling here. If there is an equal protection problem presented by this Louisiana statute, it is *Dukes* which provides the standard by which we must act. I woefully and sorrowfully concede that under the rule set forth in *Dukes* and its progeny, Louisiana's dual employment law withstands equal protection scrutiny.

### 2. ... But Is There an Equal Protection Problem?

There is a threshold question in this case which needs to be addressed. The parties and the District Court have assumed that this dual employment statute poses an equal protection problem. To the extent that there has been analytical dispute, the controversy has focused upon the proper standard of equal protection review to be applied. However, I would question whether we even need to reach this issue, for it seems that this may not be an "equal protection" case at all.

---

1. La.Rev.Stat.Ann. 42:63 §§ A, E (West Supp. 1981).

2. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In that case, the Supreme Court upheld a New Orleans ordinance which purported to ban all pushcart peddlers from the streets of the French Quarter, but which provided an exemption for two sellers who had been operating for more than eight years. The exemption conferred a virtual monopoly upon these two vendors.

 Writing for a panel of this Court, I held that there was absolutely no rational basis for believing that the two specially favored hot-dog vendors (one of whom was appropriately named "Lucky Dog, Inc.") would be any more picturesque than sellers of more recent vintage. We therefore concluded that the ordinance's special exemption violated the Equal Protection Clause. *Dukes v. City of New Orleans*, 501 F.2d 706, 712 (5th Cir. 1974). However, the Supreme Court chose to uphold this officially sanctioned wiener cartel, opining that "[t]he

 city could reasonably decide" that the exempted vendors "had themselves become part of the distinctive character and charm that distinguishes the Vieux Carre." 427 U.S. 297, 305, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511.

3. Over the course of the past decade, equal protection review has become something of an opthamological exercise. For looking at challenged statutes, the Supreme Court has prescribed trifocals. In certain special cases, we are to use "strict scrutiny;" in others, "intermediate scrutiny," and in cases such as this, we are limited to the test of "minimum rationality." Of course the word "scrutiny" connotes a process whereby we make a careful examination to see if anything is wrong. In fact the standard of review called for in this case, minimum rationality, can hardly be termed scrutiny at all. Rather, it is a standard which invites us to cup our hands over our eyes and then imagine if there could be anything right with the statute.

"The equal protection clause mandates similar treatment of persons in similar situations." *ante,* 671 F.2d 137, at 131. In order to invoke equal protection scrutiny, it must be established that the challenged statute treats people unequally; that the law singles out a particular group or class of persons for special treatment. However, we have never been told what group or class of persons is specially penalized or advantaged by operation of this law.

La.Rev.Stat.Ann. 42:63 § E provides that *no person* shall simultaneously hold two full-time state or local government jobs. The statute does not deny any person the right to any one full-time public sector job. Similarly, the law denies *every* person the right to two full-time government jobs. Who is being singled out for unequal treatment? A statute may indeed be foolish or ill considered, but equal protection analysis is only triggered if legislative folly is dispensed unequally.

This law—like any law—may indeed affect different people in different ways, but this does not in and of itself make for an equal protection problem. As the majority has pointed out, the crucial question is whether the statute treats similarly situated people unequally. This statute does not do that. Louisiana has merely said that *no one* may simultaneously hold two full-time state or local government jobs. Although it may affect different people in different ways,[4] the law itself does not single out any group for a special benefit or penalty.

Because I believe that there is no equal protection problem presented by this statute, I would not reach the level of scrutiny

question addressed by the majority. However, since the majority has chosen to treat this cause as one which presents an equal protection issue, I would in the alternative concur in the finding that the challenged statute survives the "anything goes" test mandated by the Supreme Court in *Dukes.*

---

4. The 55 m.p.h. highway speed limit provides a familiar example of a law that affects different people in different ways, but which is not thought of as posing an equal protection problem. The new speed limit has had a dramatic effect upon those who were accustomed to driving at 65 m.p.h. That group of people has had to give up something. In contrast, the group which always traveled at 55 is less affected. Finally, those who do not drive at all, aren't affected at all.

The speed limit is a rule which affects different groups of people in different ways, but the law itself does *not* single out a class for special treatment. The rule applies to all drivers

equally and we therefore do not think of it as posing an equal protection problem.

Like the speed limit, Louisiana's dual employment statute also affects different groups of people in different ways. Those who hold two full-time government jobs are most dramatically affected, for they exceed the "one job only" limit; those who hold one government job are less affected; and those who do not hold a government job are unaffected. However, because the dual employment rule applies equally to all—denying *everyone* the "right" to two government jobs—it does not pose an equal protection problem.