**Timothy D. BAKER, Plaintiff,**

v.

**CITY OF ALEXANDER CITY, ALABAMA, Defendant.**

**Civil Action No. 96–A–1234–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 1, 1997.

Fletcher Farrington, Savannah, GA, Louis Lee Sims, Jr., Dadeville, AL, for Plaintiff.

Randall C. Morgan, Terry A. Sides, Montgomery, AL, for Defendant.

### Memorandum Opinion

ALBRITTON, District Judge.

On August 8, 1996, Timothy D. Baker ("Plaintiff") filed a Complaint in this court against the City of Alexander City, Alabama (also referred to as "Defendant"). The Plaintiff alleges a cause of action under 42 U.S.C. § 1983 for the violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The Plaintiff also alleges that the Defendant violated Article I, sections 1 and 22 of the Alabama Constitution of 1901. On April 25, 1997, with the consent of the parties, the court Ordered the parties to file cross-Motions for Summary Judgment along with briefs and supporting evidence. The case is presently before the court on the cross-Motions for Summary Judgment.

### Summary Judgment Standard

As discussed above, the present case has been submitted to the court on cross-Motions for Summary Judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the parties have submitted cross motions for summary judgment, and the Court believes that the stated facts and the evidence submitted are dispositive of all issues. Thus, one of the parties is entitled to judgment as a matter of law. The court emphasizes that in resolving the present cross-Motions for Summary Judgment the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987).

### Facts

The evidence before the court, viewed in the light most favorable to the Plaintiff, reveals the following facts:

The Plaintiff is a forty-six year old Captain in the Alexander City Police Department. The Plaintiff initially began working for Alexander City on July 24, 1972 as a truck driver in the street department. On July 18, 1973, the Plaintiff transferred to the police department and served as a patrolman with the Alexander City Police Department until January of 1978. In January of 1978 the Plaintiff resigned from his employment with Alexander City and accepted a position with the Alabama Department of Corrections as a corrections officer. The Plaintiff served as a

corrections officer until May of 1979 when he returned to his position as a patrolman with the Alexander City Police Department. The Plaintiff has served as a police officer in Alexander City continuously since May 1979.

On October 1, 1965, Alexander City implemented a pension and retirement plan available to all eligible employees. This pension and retirement plan was elective, and employees were given the option not to participate in the plan. The Plaintiff did not participate in this pension and retirement plan. This plan remained in effect throughout the Plaintiff's first period of employment with Alexander City. Following the Plaintiff's resignation from the Alexander City Police Department in January of 1978, Alexander City adopted and implemented a new pension and retirement plan. This plan, like the preceding plan, was issued to the City by Travelers Insurance Company. Unlike the first plan, however, participation in this new pension and retirement plan was mandatory for all City employees.

In May of 1979 the Plaintiff resigned from his employment with the Alabama Department of Corrections and returned to work for the Alexander City Police Department. In accordance with the pension and retirement plan then in effect, the Plaintiff thereafter participated in and made contributions toward the pension and retirement plan. In 1995, Alexander City decided to join the Employee's Retirement System of Alabama ("RSA") and thereby transfer its existing pension and retirement plan into the RSA. During this period of transition, the Plaintiff first requested that the Defendant give him credit for his prior term of service, from 1972 to 1978, during which he had not participated in the Defendant's elective pension and retirement plan. However, the Defendant refused to give the Plaintiff retirement credit because the Plaintiff had no prior service with the Defendant creditable under the Defendant's retirement plan prior to the time the Plaintiff began his second term of employment with Alexander City in 1979. Apparently, the Defendant based this decision

on the fact that the Plaintiff had a break in his service with the City from January, 1978 to May, 1979. The Defendant informed the Plaintiff that he was only eligible for the prior service rendered since 1979.

James Campbell was initially employed by the Defendant in 1969 under the CETA program. On November 1, 1971, Mr. Campbell was employed directly by the Defendants in the carpenter shop. Mr. Campbell thereafter received a promotion to the position of street superintendent, a position that he occupied continuously until 1980. From approximately October or November of 1980 until November of 1984 Mr. Campbell was not actively serving in any position with the Defendant. In November of 1984 Mr. Campbell returned to active employment with the Defendant. In approximately 1992, Mr. Campbell asked the Defendant to give him credit for his prior term of service with the City. The Defendant agreed and Mr. Campbell's employment date was adjusted to indicate that his employment began in 1971. As a result, Mr. Campbell received credit for his prior term of employment with the Defendants as well as the period of time that he was not actively in the service of the Defendant.[1]

### *Discussion*

█ The Plaintiff asserts that the Defendant's refusal to grant him credit for his prior term of employment decreases the present value of his retirement account and increases the length of time that he will have to work for the Defendants in order to become eligible for full retirement benefits. The Plaintiff contends that the Defendants have granted other similarly situated employees credit for prior terms of employment. Therefore, the Plaintiff alleges that the Defendant has denied him the equal protection of the laws secured under the Fourteenth Amendment of the United States Constitution.

---

1. The Plaintiff maintains that another similarly situated employee, Mr. Warren Booth, was also permitted to obtain retirement credit for prior service. However, the only evidence submitted in support of this contention is the Plaintiff's conclusory and speculatory statement during his deposition that Mr. Booth was similarly situated to him and that the Defendant treated Mr. Booth differently.

The Equal Protection Clause of the Fourteenth Amendment guarantees that governmental "classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals." J. Nowak & R. Rotunda, Constitutional Law § 14.2 (4th ed.1991). "The equal protection guarantee has nothing to do with the determination of whether a specific individual is properly placed within a classification. Equal protection tests whether the classification is properly drawn." *Id.* "In order to subject a law to any form of review under the equal protection guarantee, one must be able to demonstrate that the law classifies persons in some manner." *Id.* § 14.4.

There are three categories of equal protection claims. The first such claim asserts that a statute discriminates on its face. *See Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985). The second type of equal protection claim asserts that the neutral application of a facially neutral statute has a "disparate impact." *See Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The third and final type of equal protection claim is that the defendants are unequally administering a facially neutral statute. In the present case, the Plaintiff is not asserting either that a particular ordinance or state law discriminates on its face, or that a particular ordinance or statute has a disparate impact. Rather, the Plaintiff's claim is most closely analogous to those claims falling within the third category of equal protection claims.

The Plaintiff, however, disagrees with the Defendant's assertion that his claim must be analyzed according to one of the aforementioned three categories. The Plaintiff asserts, rather, that his claim, that he was treated differently from an identically situated person, should not be considered under any of the three categories mentioned above. Instead, the plaintiff contends that the court should determine if the Plaintiff was treated differently from identically situated persons and, if so, inquire whether the government can establish a rational basis for the distinction. *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)(stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike....").

The Plaintiff claims that another employee of Alexander City, Mr. James Campbell, was identically situated to himself, and that the Defendant treated him differently for no rational reason. The Plaintiff contends that, upon Campbell's request, the Defendant changed his date of employment from 1984 to 1971 thereby giving Campbell credit for twenty-four years of service, including four years where Campbell was not actively working for the city. According to the Plaintiff, and in contrast to the City's treatment of Campbell, the Defendant refused to grant the Plaintiff credit for his prior term of service, dating back to July 24, 1972, on the basis that the Plaintiff had a sixteen month break in his service with the Defendant from January, 1978 until May, 1979. The Plaintiff contends that the Defendant's grant of credit to Mr. Campbell, who had a four-year period when he was not actively in the service of the Defendant, and denial of credit to him violated the Equal Protection Clause of the Fourteenth Amendment.

The court first notes that the Plaintiff does not identify, either in his Motion for Partial Summary Judgment or in his opposition to the Defendant's Motion for Summary Judgment, any particular ordinance, regulation, or statute that he claims violates the Equal Protection Clause of the Fourteenth Amendment. However, the court accepts the Defendant's assertion that this case involves Alexander City Resolution 96–50. Resolution 96–50 provides, in relevant part, that the Defendant agrees "to certify as creditable prior service all service which was credited in City's prior retirement plan rendered to the City of Alexander City's prior to February 1, 1996...." The evidence indicates that the Defendant refused to give the Plaintiff credit for his employment with the City prior to May 21, 1979, because the Plaintiff had a break in his service with the Defendant and employees were only given retirement credit for prior service that was credited in the Defendant's prior retirement plan.

In *Gosney v. Sonora Independent School District,* 603 F.2d 522 (5th Cir.1979), the Fifth Circuit held that the Sonora Indepen-

dent School District violated the Equal Protection Clause of the Fourteenth Amendment when it refused to renew the plaintiffs' contracts based on the plaintiffs' violation of its policy against outside employment by school district employees.[2] The court found that "other employees equally subject to the contractual restriction and ... equally engaged in business enterprises, such as ranching, were not denied employment...." *Id.* at 527. Based on the circuit's "firmly established [precedent] that a public education system may not single out an instructor ... for the 'imposition of restrictions which are not applicable to others similarly situated,'" the court held that the defendant "violated [the plaintiff's] fourteenth amendment right to equal protection of the law." *Id.* (citing *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970) and *Trister v. University of Mississippi,* 420 F.2d 499 (5th Cir.1969)). In *Trister,* the Fifth Circuit explained that the

> "defendants ... denied plaintiffs the equal protection of the laws by imposing upon their activities restrictions that are different and more onerous than those imposed upon other professors in the same category ... Plaintiffs ... have the constitutional right to be treated by a state agency in no significantly different manner from others who are members of the same class...."

*Trister,* 420 F.2d at 502.

In *Ciechon v. City of Chicago,* 686 F.2d 511, 524 (7th Cir.1982), the Seventh Circuit likewise held that the defendant's decision to discharge one paramedic, while taking no action whatsoever against a second, identically situated paramedic, "was unreasonable and arbitrary and deprived [the plaintiff] of equal protection of the law." The *Ciechon* court emphasized, however, that there was absolutely no scenario under which the defendant's treatment of the two paramedics could be reconciled and that the defendant's actions were "not made out of error, neglect, or mistake," but rather, were intentional acts of invidious discrimination against similarly situated persons. *Id.* at 522–24. In *Vukadinovich v. Board of School Trustees of Michigan City Area Schools,* 978 F.2d 403 (7th

Cir.1992), the Seventh Circuit reiterated the proposition enunciated in *Ciechon,* but explained that the court's intervention in *Ciechon* was only justified "because the[ ] defendants purposely and invidiously chose one of two similarly situated employees for undeserved punishment and misused otherwise legitimate disciplinary procedures." *Id.* at 414 (emphasis added). The court held that because the plaintiff could only list a few employees who were similarly situated to him who were not fired, the plaintiff had failed to show "purposeful and invidious prejudice on the part of the Board." Id.

According to the Eleventh Circuit, either misapplication or selective enforcement of a statute or ordinance can result in the unequal administration of a facially neutral statute. *See E & T Realty v. Strickland,* 830 F.2d 1107, 1113 (11th Cir.1987). However, in order to constitute a denial of equal protection the "unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike" must have been an exercise of "intentional or purposeful discrimination." *Id.* at 1112–13 (citing *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944), *Tasby v. Estes,* 643 F.2d 1103 (5th Cir.1981) and *Gamza v. Aguirre,* 619 F.2d 449 (5th Cir.1980)). Although the Plaintiff maintains that the relevant portion of *E & T Realty* is dicta and not binding on this court, the court clearly reasoned that in cases such as the present, where two persons are similarly situated, "the fact that the defendants treated them differently would not establish an equal protection violation absent proof that defendants acted with discriminatory intent." *Id.* at 1113. The Eleventh Circuit reasoning in *E & T Realty,* which the Plaintiff asserts was unnecessary and dicta, reiterates the Supreme Court's equal protection analysis in *Snowden.* In *Snowden,* the Supreme Court held that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

an element of intentional or purposeful discrimination." *Snowden,* 321 U.S. at 8, 64 S.Ct. at 401. In addition, the Court held that "a discriminatory purpose is not presumed, there must be a showing of 'clear and intentional discrimination'." *Id.* (quoting *Gundling v. City of Chicago,* 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725 (1900)).

■ In the present case, the court finds that the Plaintiff has not submitted sufficient evidence to establish a question of fact that the Defendant intentionally or purposefully discriminated against him. Rather, the Plaintiff maintains that all he need establish is that the government treated two similarly situated employees differently. The Plaintiff asserts that once he has established dissimilar treatment the burden is on the government to offer a rational basis for the distinction. As discussed above, the Plaintiff's framework for equal protection analysis is flawed. In order to substantiate his claim that he was denied the equal protection of the law, the Plaintiff must also establish that the Defendants acted with discriminatory intent.

The Plaintiff contends, however, that the evidence supports a finding of discriminatory intent. According to the Plaintiff, Mr. Campbell was given credit for his prior years of service, despite the four-year interruption in active employment, because he supported Mayor Bailey's campaign for mayor. In contrast, the Plaintiff maintains that he was denied credit for his prior service because he did not support Mayor Cleveland in his 1992 campaign for mayor. Thus, the Plaintiff contends that Mr. Campbell was rewarded for supporting the winning candidate while the Plaintiff was punished. The Plaintiff relies on the deposition testimony of Mr. Campbell wherein Mr. Campbell states that he believes that he was asked to take a leave of absence and later recalled to City employment because of who he supported in the mayoral elections. The Plaintiff also cites his own deposition testimony, wherein he states that he believed that he was treated differently from Mr. Campbell because of who he supported in the mayoral elections. However, the Plaintiff admitted during his deposition that he had no factual basis for that belief. The court finds that the evidence submitted in support of the Plaintiff's position is purely speculative and falls well short of establishing a question of fact that Campbell was rewarded based on his support of Mayor Bailey and that the Plaintiff was punished because of his opposition to Mayor Cleveland. In fact, the evidence established that Mr. Campbell's date of employment was adjusted during Mayor Cleveland's term of office. The court finds that the Plaintiff's argument that he was denied credit for his prior service because of politics is completely without merit and unsupported by the evidence.

The Plaintiff's evidence fails to indicate that the Defendant intentionally chose to discriminate against the Plaintiff. There is no evidence suggesting a pattern or systemic practice of denying a certain class of individuals credit for prior terms of service with the Defendant. Moreover, there is no evidence that the Defendant's decision to grant Mr. Campbell credit for his prior service was anything other than a misapplication of the City's regulations. The Plaintiff has also submitted no evidence that City employees were systemically given credit for prior service in violation of the City's regulations. Instead, the evidence merely suggests that the Defendant may have misapplied the law with respect to either the Plaintiff or Mr. Campbell.

Absent any evidence of intentional discrimination by the Defendant, the Plaintiff's claim that he was denied equal protection of the law necessarily fails. As the Fourth Circuit explained in *Short v. Garrison,* 678 F.2d 364, 368 (4th Cir.1982), an equal protection claim fails when it "at most amounts to an allegation that state law was misapplied in [an] individual case." The Supreme Court has made it clear that the misapplication of state or local law alone does not constitute invidious discrimination in violation of the equal protection clause; "[w]ere it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). The court concludes that the present case only involves the question of whether the acts of the Defendant were arbitrary or unlawful under state law. Absent evidence of discriminatory in-

tent, the Equal Protection Clause does not provide the authority to review every allegedly arbitrary or unlawful state act for constitutional error.

The court, therefore, concludes that the Defendant is entitled to judgment as a matter of law with respect to the Plaintiff's claim that he was denied equal protection of the law.

■ The Plaintiff's Complaint also includes a claim that the Defendants violated Article I, sections 1 and 22 of the Alabama Constitution. However, § 1983 only provides an avenue for relief for the violation of federal rights. *See Motes v. Myers*, 810 F.2d 1055 (11th Cir.1987). To the extent that the Plaintiff is asserting a § 1983 claim for violation of the Alabama Constitution, therefore, the Defendant is entitled to judgment as a matter of law. To the extent that the Plaintiff may be attempting to assert a state-law claim based on a violation of the Alabama Constitution, the court finds that the Defendant is also entitled to judgment as a matter of law, since the Plaintiff has failed to allege any Alabama statutory or decisional law under which such a claim may be brought.

### Conclusion

If the Plaintiff has any viable claim against the Defendant, it would have to be a claim for benefits under the City's pension and retirement plan, with such a claim to be governed by state law. The Defendant's refusal to credit the Plaintiff for prior service, under the facts of this case, does not constitute a violation of his constitutional right to equal protection.

Based on the foregoing analysis, the court finds that the Defendant is entitled to judgment as a matter of law on all of the claims in the Plaintiff's Complaint.