Dear President Taylor,
¶ 0 This office has received your request for an official opinion in which you asked, in effect, the following question:
In light of the First Amendment to the United StatesConstitution, do Sections 841 and 842 of Title 21 of the OklahomaStatutes prohibit an out-of-state business from advertisingtattooing services within Oklahoma if the services are to beperformed in a jurisdiction where tattooing is legal?
¶ 1 Oklahoma has certain prohibitions relating to tattooing which are set forth in Title 21 of the Oklahoma Statutes at Sections 841 and 842. Section 841 provides:
 It shall be unlawful for any person to tattoo or offer to tattoo any person. As used herein to "tattoo" means to insert pigment under the surface of the skin of a human being, by pricking with a needle or otherwise, so as to produce a permanent indelible mark or figure visible on the skin. Provided, however, that the provisions hereof shall not apply to any act of a licensed practitioner of the healing arts performed in the course of his practice.
21 O.S. 1991, § 841[21-841] (emphasis added).
¶ 2 Section 842 provides:
 Any person violating the provisions of 21 O.S.19[9]1, § 841, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail not to exceed ninety (90) days or payment of a fine of not more than Five Hundred Dollars ($500.00) or by both such fine and imprisonment.
21 O.S. 1991, § 842[21-842].
¶ 3 Your question involves not tattooing but offering to tattoo. On its face, Section 841 makes illegal the mere offering to tatoo a person in the State of Oklahoma, regardless of where the actual act of tattooing is to be performed. "Offer" is defined as "to present, tender, proffer . . . to present for acceptance or rejection: hold out . . . to bring or put forward for action or consideration: propose, suggest." Webster's Third New International Dictionary 1566 (1981). Therefore, under the plain meaning of the statute, an advertisement is an "offer."
¶ 4 Advertising, as commercial speech, lies within the scope of the First Amendment, although not all commercial speech enjoysFirst Amendment protection. Virginia Pharmacy Board v. VirginiaConsumer Council, 425 U.S. 748, 771 n. 24 (1976). Speech that proposes a transaction that is illegal in itself or actively promotes illegal activity is excepted from First Amendment protection. Brandenburg v. Ohio, 395 U.S. 444, 447 (1969);Carey v. Population Services International, 431 U.S. 678, 701
(1977). The Constitution provides a lesser degree of protection to commercial speech than to other constitutionally guaranteed speech. Central Hudson Gas Electric v. Public ServiceCommission, 447 U.S. 557, 563 (1980).
¶ 5 In your question, the advertisement is one which promotes an activity available in a state where the activity is legal. The question then is whether the prohibition against such an offer runs afoul the "Freedom of Speech" Clause of the First Amendment to the United States Constitution if applied to an out-of-state business as set forth in the question, i.e., advertising in Oklahoma to perform tattooing in a jurisdiction where tattooing is legal.
¶ 6 In the case of Bigelow v. Virginia, 421 U.S. 809, 822-25
(1975), the United States Supreme Court addressed a similar issue. This case dealt with whether it was a violation of theFirst Amendment for a newspaper editor to be charged with violation of a Virginia law that prohibited the advertising of abortions in Virginia. The editor had run an advertisement in his newspaper for an abortion clinic in New York. Abortions were legal in New York at the time the advertisement was run. The Court stated:
 Moreover, the placement services advertised in appellant's newspaper were legally provided in New York at that time. The Virginia Legislature could not have regulated the advertiser's activity in New York, and obviously could not have proscribed the activity in that State. Neither could Virginia prevent its residents from traveling to New York to obtain those services or . . . prosecute them for going there. Virginia possessed no authority to regulate the services provided in New York. . . .
 A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State. It . . . may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State.
Bigelow v. Virginia, 421 U.S. 809, 822-25 (1975) (citations omitted) (emphasis added).
¶ 7 This holding precludes a state in which an activity is illegal from prohibiting the advertising of that activity as available in another state where the activity is legal.
¶ 8 Other federal circuits appear to be in agreement with this analysis. Record Revolution No. 6 v. City of Parma,638 F.2d 916, 937 (6th Cir. 1980), vacated on other grounds,456 U.S. 968 (1982) (holding that advertising the sale of drug paraphernalia in a jurisdiction where the advertising and sale was prohibited was protected by First Amendment when the sale was to occur in a jurisdiction where the sale of drug paraphernalia was legal); Lamar Outdoor Advertising v. Mississippi State TaxCommission, 701 F.2d 314, 321 (5th Cir. 1983) cert. denied,467 U.S. 1259 (1984) (proper focus on when First Amendment protection attaches to commercial speech is not the geographical scope of the advertised product's legal availability, but whether the transaction proposed by the advertisement is legal).
¶ 9 Statutes are to be construed as being constitutional whenever possible. City of Norman v. Liddell, 596 P.2d 879, 882
(Okla. 1979). The application of Sections 841 and 842 would be unconstitutional if applied to advertisements for legal tattooing that occurs out-of-state. Therefore, the proper construction of Sections 841 and 842 is that they refer only to offers made in Oklahoma when the act of tattooing is to occur in Oklahoma.
¶ 10 It is, therefore, the official Opinion of the AttorneyGeneral that:
Sections 841 and 842 of Title 21 of the Oklahoma Statutes do notapply to prohibit the advertising of tattooing services when thetattooing is to occur in a jurisdiction where such an act islegal.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
STEVEN E. LOHR ASSISTANT ATTORNEY GENERAL